Milligan, J.,
delivered the opinion of the court:
In July, 1861, the plaintiff in this action alleges he was mustered as captain into the military service of the United States, and that he served in that capacity until April, 1862, when he was promoted to the rank of major, and as such duly commissioned. On the 13th of April, 1862, a court-martial was organized, pursuant to an order previously issued, before which he was tried and convicted, and sentenced to be cashiered and dismissed from the military service of the United States, and to forfeit all pay and allowance then due or thereafter to become due.
But before the sentence of the 'court-martial, as he alleges, was promulgated, or he had notice thereof, he was captured by the military forces of the enemy, and confined in prison until the 8th day of March, 1865.
He further states, he had been paid for his services up to and including the 31st of December, 1862, and that his pay and allowance from the 1st of January, 1863, up to the 8th day of March, 1865, when he had notice of the sentence of the court-martial, is still due him, and for which this action is prosecuted.
Three questions are presented in argument: 1st. It is insisted that the court-martial that tried and convicted the claimant, was irregular, and had no legal authority to try and pronounce judgment of conviction upon him. 2d. The officer who approved the sentence of conviction was not lawfully authorized thereunto. 3d. The capture was before the promulgation of the sentence of the court, and did not, under the act of Congress approved March 30,1814, 3 Stat. L., 114, work a forfeiture of his pay and allowance during his imprisonment.
In answer to the first two propositions, we have carefully examined the acts of Congress regulating the calling of courts-martial, and the approval of the sentences thereof, and have no difficulty whatever in sustaining the regularity of the court, and its lawful authority to try and sentence the claimant.
It is equally clear that the general who approved the finding *215 and sentence of tbe court bad lawful authority to do so; and therefore we dismiss these questions without encumbering this opinion with further argument on them.
The third proposition presents more difficulty, but which we think may be resolved in a clear and satisfactory manner.
The act of the 30th of March, 1814, sec. 14, provides: “That every officer, non-commissioned officer, and private of any militia or volunteer corps in the service of the United States, who has been or may be captured by the enemy, shall be entitled to recover during his captivity, notwithstanding the expiration of his term of service, the same pay, subsistence, and allowance to which he may be entitled whilst in the actual service of the United States.”
This section of the statute has undergone construction, in this case, by the Judge Advocate General, which we think is fair and just, and I cannot do better than to incorporate it into this opinion, as expressing the views of this court on this section. He says: “ The status of a soldier is not changed by his capture, so far as his relations to this government are concerned. He is entitled to all the rights of a soldier after capture, as if he were in actual service, under the conditions-which existed at the time he was taken. If, therefore, he were entitled to pay at that time, his rights would, under the act of 1814, continue until his release, notwithstanding tbe expiration of his term of service.”
“At the time he was captured, Major Phelps was awaiting sentence of a court-martial; but, as there is no law to prevent the payment of an officer under such circumstances, except in cases of desertion, he was entitled to pay at that time, and his rights must continue, unless the subsequent confirmation and publication of the sentence determine them.”
Though the act of 1814 is apparently confined to cases of expiration of the term of service by lapse of time, it may well be regarded as including in its spirit the termination of service by any other means whatever. That act is in conformity with a principle which is general in its application, to wit, that when a soldier’s connection with the service ceases, by limitation of time or by act of the government, he should be restored to his rights as a citizen, subject only to the right to impose disabilities by way of punishment for offences of which he has been duly convicted.
*216 Allowing this provision of the statute, when properly construed, to cover the case of the' claimant, the only question remaining for our determination is, to ascertain whether he was in the discharge of his duty at the time of his capture.
The record shows that the trial was had at Charleston, West Virginia, and after the hearing of the case, and before the sentence was promulgated, the claimant was ordered “ to proceed to Oeredo, West Virginia, and to await the decision of the court-martial in his case.” This order is dated on the 17th of May, 1863; and it appears he was afterwards captured at Guyan-dotte, Virginia, on the 7th of September, 1863, a distance of ten miles from the place to which he was ordered. No sufficient excuse is shown for his disobedience of orders, and Guyandotte is proven to be a place notorious for its rebel sympathizers, and the frequency with which it was visited by guerillas and rebel raiding parties. Whether he knew his sentence before he went there or not, does not appear; in any event, his disobedience of orders puts him beyond the rule in regard to prisoners of war captured while in the discharge of their duty, and he cannot escape the consequences of his own act.
Whether the sentence of the court-martial was published before his capture or not, is not fully proven. It is, however, reasonable to suppose it was, as 23 days elapsed after the approval of the sentence of the court before he was taken prisoner. But, however this may be, the sentence, upon his release from captivity, was duly announced to him, and it is now lawfully executed, and the forfeiture of all pay then due or thereafter to become due is not, under the circumstances of this case, subject to remission.
The judgment of the court is, therefore, that the petition be dismissed, and that the claimant take nothing by his action.